Craft EM CLO
2006-1, Ltd., Plaintiff,

against
Deutsche Bank AG, Defendant.


656152/16

Plaintiff WOLLMUTH MAHER & DEUTSCH 500 5th Avenue
New York, NY 10110 
BY: RANDALL R. RAINER
WILLIAM A. MAHER RONALD J.
ARANOFF
JAY G. SAFER
CHRISTOPER J. LUCHT 
Defendant
JONES DAY
250 Vesey Street
New York, NY
10281
BY: JAYANT W. TAMBE KELLY A. CARRERO
MICHAEL O.
THAYER


Charles E. Ramos, J.

In motion sequence 001, defendant Deutsche Bank AG ("Deutsche Bank") moves to dismiss
plaintiff Craft EM CLO 2006-1, Ltd.'s ("Craft") complaint ("Complaint") pursuant to CPLR
§§ 3211(a)(1), (3), (5), and (7).
Background
The facts set forth herein are
taken from the Complaint, and are assumed to be true for purposes of disposition.
Craft is a Cayman Islands exempted limited liability company with its principal place of
business in Grand Cayman (Complaint, ¶ 11).
In 2006, Deutsche Bank created and marketed a collateralized loan obligation ("CLO")
known as CRAFT EM CLO 2006-1 (the "Transaction") (Complaint, ¶ 1). The CLO issued
three subordinated classes of notes — Classes E, F, and G, which were linked to a
portfolio of loans and derivative transactions (the "Notes"). Craft gained exposure to the portfolio
through credit default swap transactions between Craft and Deutsche Bank (Complaint,
¶¶ 23-24).
Craft sold the Notes to investors and HSBC Bank USA, N.A. (the "Trustee") held the
proceeds, which were eventually to be used to repay the principal balance due on the Notes when
the Transaction expired.
The Class E and F Notes were issued pursuant to an indenture between Craft and the Trustee,
dated June 21, 2006, and a subsequent First Amended and Restated Indenture, dated January 30,
2007 (the "Class E/F Indenture"). The Class G Notes were issued pursuant to an essentially
identical indenture (the "Class G Indenture") (collectively, the "Indenture").
Pursuant to Section 12.1 of the Indenture, Craft agreed to "grant all of its right, title, interest
and estate in, to and under the Issuer Swap Agreement to the Trustee pursuant to the Granting
Clause hereof" (Ex. 2-5, § 12.1[a]). 
The Transaction also involved a credit default swap agreement between Deutsche Bank and
Craft with respect to the Class E Notes and the Class F Notes issued by Craft ("Class E/F Swap
Agreement") and the Class G Notes issued by Craft ("Class G Swap Agreement") (collectively,
the "Swap Agreements") (Complaint, ¶ 3).
The Swap Agreements were memorialized in the Class E/F CDS Agreement and the Class G
Agreement, both consisting of: (i) an ISDA Master Agreement; (ii) a Schedule; and (iii) a
Confirmation (Complaint, ¶ 23).
In exchange for the payments under the Swap Agreements, if a Reference Obligation
defaulted, as defined therein, the Trustee would use the Notes' collateral to make payments that
would directly reduce the principal due on the Notes at the end of the Transaction in July 2012
("Credit Event Payment"). 
The Swap Agreements provided that "neither this Agreement nor any interest or obligation in
or under this Agreement may be transferred by either party hereto without the prior written
consent of the other party" (Tambe Aff., Ex. 8, 9, ¶5[h]).
After litigation brought by Arco Capital Corporation Ltd. ("Arco") in Federal Court relating
to breach of the Swap Agreements, on March 12, 2014, Arco and Craft commenced an action in
this Court against Deutsche Bank, entitled Craft EM CLO 2006-1, et al v Deutsche Bank
AG and bearing the index number 650797/2014, alleging breaches of the Swap Agreements
(hereinafter "Craft I").
On July 17, 2014, this Court dismissed the initial complaint on the ground that both plaintiffs
lacked standing (NYSCEF Doc. No. 55). Thereinafter, on October 24, 2014, Craft and Arco filed
[*2]an amended complaint as of right. On January 15, 2015, this
Court dismissed the amended complaint, concluding, yet again, that both parties lacked standing
(Craft EM Clo 2006-1, Ltd. v Deutsche Bank AG, 2015 WL 11387700 [Sup Ct, NY
County 2015]).
On May 31, 2016, the First Department affirmed this Court's dismissal in full, on the ground
that both Craft and Arco lacked standing to pursue the asserted claims (Craft EM Clo 2006-1, Ltd. v Deutsche
Bank AG, 139 AD3d 638 [1st Dept 2016]). Although Craft argued that HSBC assigned
back to it any and all rights under a July 27, 2015 assignment agreement ("2015 Assignment
Agreement") which purported to assign Craft all claims related to the E/F Notes held by HSBC,
that issue was not part of the appellate record (Id.). 
Subsequently, on November 4, 2016, pursuant to an issuer order ("Issuer Order"), HSBC, as
Trustee, purported to transfer and assign to Craft all of HSBC's previously granted rights, title,
and interest in all causes of action and claims that HSBC had, or had the right to assert, against
Deutsche Bank relating to the Class G Swap Agreement ("Class G Assignment
Agreement")(Complaint, ¶ 14).
On November 18, 2016, pursuant to the Issuer Order, HSBC, as Trustee, purported to
transfer and assign to Craft all of HSBC's previously granted rights, title, and interest in all
causes of action and claims that HSBC had, or had the right to assert, against Deutsche Bank
involving the Class E/F CDS Agreement ("Class E/F Assignment Agreement") (together, the
"2016 Assignment Agreements") (Complaint, ¶ 15).
The 2016 Assignment Agreements indicate that Craft acknowledges that the claims asserted
in Craft I "have significant value that may be realized only by the pursuit of legal
remedies against the Issuer Swap Counterparty, and other relevant parties" (Tambe Aff., Ex.
23).
The 2016 Assignment Agreements further provide that Craft has informed [HSBC] that it
has the ability and intention to promptly pursue claims relating to the Issuer Swap Agreement,
and that it is willing to do so if the Trustee transfers to the Issuer any and all rights the Trustee
has to bring and pursue such claims" (Tambe Aff., Ex. 23).
 Craft commenced the instant action in November 2016 and alleges that Deutsche
Bank breached its obligations set forth in the Swap Agreements, including, but not limited to, its
obligation to comply with the independent accountant certification requirement, to apply updated
Moody's mapping tables in determining Moody's equivalent ratings, and to meet specified criteria
in the Reference Obligations (Complaint, ¶ 131).
Discussion

Deutsche Bank moves to dismiss Craft's complaint pursuant to CPLR 3211(a)(1), (3), (5),
and (7), arguing that Craft lacks standing because the purported assignments are void and
prohibited under the Indenture, and that the Trustee had no viable claims to assign at time of the
2016 Assignment Agreements.
In New York, a cause of action for breach of contract accrues at the time of the beach
(Ely-Cruikshank Co., Inc. v Bank of Montreal, 81 NY2d 399, 402 [1993]). Like a breach
of contract action, a cause of action for breach of the implied covenant of [*3]good faith and fair dealing is governed by a six-year statute of
limitations (CPLR 213[2]; Liberman v Worden, 268 AD2d 337 [1st Dept 2000]). 
On a motion to dismiss pursuant to CPLR 3211(a)(5), the movant must establish, prima
facie, that the time to commence an action has expired. The burden then shifts to the plaintiff to
raise an issue of fact as to whether the statute of limitations was tolled or otherwise inapplicable
(Wilson v Southampton Urgent Med.
Care, P.C., 112 AD3d 499, 499-501 [1st Dept 2013]).
Pursuant to Section 12.1 of the Indentures, Craft "grant[ed] all of its right, title, interest and
estate in, to, and under the Issuer Swap Agreement to the Trustee pursuant to the Granting Clause
hereof" (Tambe Aff., Ex. 2-5, § 12.1[a]).
The 2016 Assignment Agreements provide, in relevant part:
The Trustee hereby transfers and assigns to the Issuer all of the Trustee's right, title, and
interest in the causes of action and claims it has, or that it has the right to assert (either as
principal or agent, including as attorney-in-fact), against the Issuer Swap Counterparty arising out
of, in connection with, and/or relating to the Issuer Swap Agreement whether known or
unknown, whether arising before, on or after the date of this Agreement. (Tambe Aff., Ex. 23-24,
§ 1).
Deutsche Bank argues that the instant action is untimely under the applicable statute of
limitations, as the claims HSBC purported to assign were time-barred no later than October 2016,
prior to the entry of the 2016 Assignment Agreements in November, 2016 (CPLR 213[2]). As a
result, Deutsche Bank maintains that HSBC had no viable claims to assign.
Deutsche Bank further argues that Craft's reliance on the New York Savings Statute is
inconsistent with the purpose of the statute, as Craft's failure to include the Trustee in the
Craft I action was not simply "some error" or "excusable mistake". According to
Deutsche Bank, the decision to not include the Trustee was a strategic litigation tactic.
In opposition, Craft argues that the current action is timely. To Craft, the fact that the current
action involves the Trustee's claims, whereas Craft I involved the Issuer's claims, does
not negate the timeliness of this action, especially when the claims are essentially the same. 
Additionally, Craft argues that pursuant to the New York Savings Statute (CPLR 205[a]),
Craft timely commenced this action within six months of the Appellate Division's affirmance of
this Court's dismissal of the Craft I action.
This Court finds that Craft's claims that Deutsche Bank failed to apply updated Moody's
mapping tables and to meet specified criteria in the Reference Obligations are time-barred under
the applicable statute of limitations, as HSBC had no viable claims to assign as of the execution
of the 2016 Assignment Agreements (CPLR 213[2]).
Deutsche Bank has established that Craft's claims as to the improper Reference Obligations
and failure to apply updated [*4]Moody's mapping tables accrued
no later than October 2008, and as a result, the statute of limitations expired in October 2016
(CPLR 213[2]; Complaint, ¶ 105). Craft has failed to establish otherwise.
Craft alleges that Deutsche Bank breached the Swap Agreements by including Reference
Obligations in the Reference Portfolio that violated the eligibility criteria. The Swap Agreements
require that the Eligibility Criteria be satisfied by the date that the Reference Obligation is first
added to the Reference Portfolio, in addition to the date of any subsequent replenishment of that
Reference Obligation (Complaint, ¶38, 131[a]). Craft further alleges that all additions to
and/or replenishments of the Reference Portfolio occurred prior to October 2008 (Complaint,
¶ 109).
Craft is correct that CPLR 205(a), (the Savings Statute), provides the Craft I
plaintiffs a six-month period to commence a new action asserting the same rights after
Craft I's termination (see Arty v
New York City Health and Hosps. Corp., 148 AD3d 407 [1st Dept 2017]). An action is
deemed terminated once an appeal has been exhausted by either a determination on the merits or
a dismissal (Malay v City of
Syracuse, 25 NY3d 323, 329 [2015]).
Here, the action was terminated on May 31, 2016, when the First Department affirmed the
dismissal of Craft I on May 31, 2016. As a result, Arco and Craft I, as the issuer and prior
plaintiffs, would have until November 30, 2016 to commence a new action asserting identical
claims under CPLR 205(a).
However, Craft, acting as the Trustee, failed to establish that it is the same "plaintiff"
representing the same interests as the plaintiffs in the Craft I action (see U.S. Bank N.A. v DLJ Mtge. Capital,
Inc., 141 AD3d 431, 433 [1st Dept 2016]). Accordingly, Craft, standing in the Trustee's
shoes, does not benefit from the Craft I filing date, which involved the claims of the
Issuer and not the Trustee. To afford Craft protection in this matter under CPLR 205(a) would go
beyond the statute's longstanding purpose to provide a plaintiff, or her representative, who
prosecuted an initial action, a second chance should her action terminate for reasons not
involving the merits (Reliance Ins. Co. v
PolyVision Corp., 9 NY3d 52, 56 [2007]).
Here, because its claims were already time-barred and thus stale at the time of the
assignment, the New York Savings Statute is not applicable to Craft's claims that Deutsche Bank
failed to apply updated Moody's mapping tables in determining Moody's equivalent ratings and to
meet specified criteria in the Reference Obligations. 
Craft, as assignee, took HSBC's (the Trustee's) causes of action "subject to all the infirmities,
equities and defenses that could have been asserted against the assignor, [HSBC], at the time of
the assignment" (Trans-Resources, Inc. v Nausch Hogan [*5]& Murray, 298 AD2d 27 [1st Dept 2002]). Because the
applicable statute of limitations with respect to the Trustee's claims had already expired prior to
November 4, 2016, (when the assignment was effectuated) HSBC could not assign stale claims.
To allow Craft to proceed with these claims under CPLR 205(a) would "breathe life into
otherwise stale claims" (Reliance, 9 NY3d at 58).
Likewise, Craft's claim that Deutsche Bank violated the "implied covenant of good faith and
fair dealing by improperly exercising its discretion and control over the Transaction" are
time-barred with respect to those claims involving Moody's mapping tables and Reference
Obligations for the same reasons set forth above (Complaint, ¶ 131[d]).
With respect to that portion of Craft's claims that allege improper Accountant Certification
following a credit event, the Court is unable to evaluate the timeliness of that claim. Craft alleges
that a total of seventeen credit events were declared, references by name four such events, and
attaches one accountant certification (although not for one of the four credit events referenced).
Of the four, two are clearly time-barred. For instance, for Egan and Peace Mark, the allegedly
improper accountant certifications were issued in 2007 and September 2008, at the latest
(Complaint, ¶¶ 70, 73, 76-78). With respect to the credit events associated with the
collapse of Grande Holdings and Arcapita, the Complaint does not set forth when the Accountant
Certification was issued (Complaint, ¶¶ 85, 88, 92). Thus,limited discovery on the
timing of the issuance of the remaining independent accountant certifications will permit the
Court to determine when this portion of the claim accrued.
This Court will not address Deutsche Bank's remaining arguments in light of the
untimeliness of the Craft's claims for breach of Moody's Mapping Tables and Reference
Obligations and the need for limited discovery as to the date of the alleged violations of
independent accountant certifications. 
Accordingly, it is
ORDERED that Deutsche Bank AG's motion to dismiss is granted in its part, and otherwise
held in abeyance, to be restored following completion of limited discovery as provided above; all
other discovery shall be stayed; and it is further
ORDERED that the parties are to complete limited discovery by September 29, 2017; and it
is further
ORDERED that the parties shall appear for a status conference on Wednesday October 4,
2017 at 10:00AM.
Dated: August 14, 2017